**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **AMY TURNER,** | § § | |
| *Plaintiff,* | § § | Case No._____ |
| v. | § § | |
| **CRITICAL START, INC.,** | § § | |
| | § | **JURY TRIAL DEMANDED** |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Amy Turner files this, her Original Petition against Defendant Critical Start, Inc., and in support states as follows:

### I. PARTIES:

1. Plaintiff Amy Turner is a former employee of the Defendant, and is a resident of Denton County, Texas.

2. Defendant Critical Start is a Delaware corporation, headquartered in Texas. It's corporate office is located at 6100 Tennyson Pkwy., Ste. 200, Plano, TX 75024. It can be served by and through its registered agent: Tera Davis, 6851 Communications Pkwy., Plano TX 75024.

### II. JURISDICTION & VENUE:

3. This Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act pursuant to 42 U.S.C. 2000e-5(f)(3) and 28 U.S.C. §1331.

4. Venue is proper in the Sherman Division of the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b), as all or a substantial part of the

acts and omissions giving rise to Plaintiff's causes of action occurred in or around Collin County, Texas, which is in this District and Division.

### III.  FACTS:

5   In or around December 2020, Ms. Turner interviewed for the role of "Senior Customer Success Manager" with Critical Start.  She interviewed with Mr. Bill Trash, V.P. Customer Success.

6.   During the interview, Mr. Thrash told Ms. Turner that she would be a better fit for the Director role, and she was extended an offer for that position.

7.   She began work on January 25, 2021.

8.   Ms. Turner had all of the qualifications and experience required for the Director of Customer Success position, as evidenced by Mr. Thrash's recommendation that she would be a better fit for this role, rather than the one she originally applied for.

9.   At the time this role was offered to Ms. Turner, there was no written job description (or "job rec") for it that Ms. Turner could have reviewed.

10.   Critical Start's written policies promote an open, supportive, and collaborative environment, and encourage employees to ask questions and "challenge the status quo."  As a result, soon after starting work, Ms. Turner expressed her concern about promoting a podcast entitled "Son of a Breach!"

11.   Ms. Turner told several Critical Start employees that the name of the podcast was sexist, and expressed her discomfort with having to promote it.  She also expressed her belief that the podcast title would alienate female listeners.

12. In late January, she sent this text message to Bill Thrash:

*"I'll be over here praying that they decide to change the name of the podcast. In today's meeting they said my group would be responsible for sending the podcast out to customers. Got the biggest pit in my stomach. Talk about a boys club. Such an unlady like titled podcast. And this lady it's is going to be the one sending it out. Oh the irony. Perhaps it's a small price to pay to get to work for such an amazing company."*

13. Sarah Mutscheller (Sr. Director of Digital & Demand Generation) was one of the coworkers to whom Ms. Turner had expressed her concerns. After she did so, Sarah asked Ms. Turner if she could escalate the concern up to her boss. Ms. Turner said that would be O.K. Ms. Mutscheller later followed up with Ms. Turner, and told her that her concerns had been heard and considered.

14. After speaking with Sarah, Ms. Turner felt heard, and felt better about the situation. In an attempt to smooth things over, she sent this text message:

*".i now have zero issues with podcast title after getting a better understanding from Sarah. Looks like it's the way the voice of brand is moving towards. It's refreshing to be able to have a question, be heard without negative repercussions, get an explanation, and all the sudden the spinning in your head stops and you are able to get behind something 100% that was making you cringe just the day before. This may be the best company on earth."*

15. The dismissive response she got from her boss (Bill Thrash) was simply: "I don't want anyone to be here who doesn't feel comfortable, so if that's the case, then we probably needed to come up with a package and part ways."

16. Then on February 8, 2021, Ms. Turner was fired - just days after raising her complaints of sexism, and shortly after being told that her discomfort was grounds for separation.

17. After being fired, Ms. Turner emailed Rob Davis, asking him to consider the company's principles before signing her termination papers. She explained that she had done

nothing wrong, and asked that she be given an opportunity to show how she could thrive in the role.  Nobody responded.

18. In a February 17, 2021 meeting, Rob Davis offered an explanation as to why Ms. Turner was fired.  He said that when the company interviewed Ms. Turner, they had believed that: (a) she had proficiency in Gainsight, a customer tracking software program, and (b) she had experience in running large customer success teams, including hiring and firing, but it turned out she did not actually have these, so she was fired.

19. The first explanation given for her termination - that she did not have proficiency in Gainsight - is false and unworthy of credence: Ms. Turner's resume did not claim that she was proficient in Gainsight, nor did she represent herself to be proficient in Gainsight in any way.[1]  Critical Start had no reason to believe Ms. Turner had any proficiency in Gainsight.

20. In fact, in Ms. Turner's interview, Bill Thrash told her that he was considering getting rid of Gainsight altogether.  He also said that for the time being, they had paid for a Gainsight consultant who does everything the company needs, and that this consultant would be there to help Ms. Turner with the software.

21. So even if Gainsight proficiency *was* a true requirement for Ms. Turner's position, the company stated that it had already hired someone to fill that requirement, and that they were considering "ripping out" Gainsight altogether, and replacing it with Salesforce.

22. Ms. Turner was never given the opportunity to learn Gainsight, as she was terminated within two weeks of beginning her onboarding training.

23. The second explanation given for her termination - that she did not have experience running customer success teams - is also unworthy of credence.  This experience was

---

[1] Proficiency in Gainsight was not mentioned in the job description that Ms. Turner had applied for - so she would've had no reason to make such a representation to the company.

not mentioned as a requirement in the job description Ms. Turner applied for - so she would've had no reason to make this representation to the company. Ms. Turner's resume did not claim that she had this experience. This requirement was not discussed during her job interview. Critical Start had, therefore, no reason to believe that Ms. Turner had this type of experience.

24. Ms. Turner was not fired because of her lack of proficiency in Gainsight software, or because of a lack of experience running customer success teams. Those were false excuses, proffered after the fact, as pretext for a retaliatory motive. Ms. Turner was fired because she "rocked the boat" and accused the company of sexism.

## IV.  CAUSES OF ACTION

### COUNT ONE:  RETALIATION
### (TEX. LAB. CODE § 21.055 and 29 USC § 2000e)

25. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

26. Critical Start fired Ms. Turner because she opposed and complained about acts that she, in good faith, believed to be discriminatory.

27. Plaintiff seeks to recover all damages to which she is entitled, including but not limited to: all lost wages and employee benefits, punitive damages, pre-judgment interest, and post-judgment interest.

28. Plaintiff requests reinstatement (or adequate front pay in lieu of reinstatement), and any additional equitable or other relief to which she may be entitled.

29. Plaintiff also seeks recovery of her reasonable attorney's fees and court costs.

## V.  JURY DEMAND

30. Plaintiff requests trial by jury on all claims.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial they obtain judgment against Defendants as follows:

a. Judgment against Defendants for actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial;

b. Judgment against Defendants for compensatory damages in the maximum amount allowed by law;

c. Judgment against Defendants for punitive damages in the maximum amount allowed under law;

d. An order that Defendants take such other and further actions as may be necessary to redress Defendants' violation of the TCHRA and TITLE VII;

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including reasonable attorney's fees; and

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

Tremain Artaza PLLC

By: /s/ Ashley Tremain
      Ashley E. Tremain
      State Bar No. 24066209

13140 Coit Road, Ste. 104
Dallas, Texas 75240
Telephone: (469)-573-0229
Facsimile: (214)-254-4941
ashley@tremainartaza.com

**COUNSEL FOR PLAINTIFF
AMY TURNER**